Mark D. Flanagan (SBN 130303)
  Mark.Flanagan@wilmerhale.com
Anh-Khoa Tran (SBN 295393)
  Khoa.Tran@wilmerhale.com
Alexis J. Pfeiffer (SBN 312007)
  Alexis.Pfeiffer@wilmerhale.com
Sarah E. Maciel (SBN 333410)
  Sarah.Maciel@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
Telephone:  (650) 858-6000
Facsimile:   (650) 858-6100

*Attorneys for Defendants Frost & Sullivan Inc.,
Wyman Bravard, and David Frigstad*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| DARRELL HUNTSMAN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>FROST & SULLIVAN INC., a Delaware corporation; WYMAN BRAVARD, an individual; DAVID FRIGSTAD, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:23-cv-06088-NC<br><br>**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO FIRST AMENDED COMPLAINT; DEFENDANT FROST & SULLIVAN INC.'S COUNTERCLAIMS** |
| FROST & SULLIVAN INC., a Delaware corporation; WYMAN BRAVARD, an individual; and DAVID FRIGSTAD, an individual,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>DARRELL HUNTSMAN, an individual,<br><br>Counterclaim-Defendant. | |

1    Defendants Frost & Sullivan Inc. ("Frost"), Wyman Bravard ("Bravard"), and David

2 Frigstad ("Frigstad") (collectively, "Defendants") hereby respond to the allegations in the First

3 Amended Complaint ("FAC") filed by Plaintiff Darrell Huntsman ("Huntsman" or "Plaintiff")

4 as follows:

5    **ANSWER**

6    All allegations made in the FAC that are not expressly admitted in this Answer are

7 denied. To the extent the headings, prayer for relief, or jury demand in the FAC require a

8 response, Defendants deny the allegations contained therein.

9    **THE PARTIES[1]**

10   1.    Defendants lack sufficient knowledge or information to form a belief concerning

11 the truth of the allegations contained in Paragraph 1 of the FAC and therefore deny them.

12   2.    Defendants admit that Defendant Frost is a Delaware corporation with its

13 principal place of business in San Antonio, Texas and that it does business in California and

14 within this District, but deny the remaining allegations of Paragraph 2 of the FAC.

15   3.    Defendants admit that Defendant Bravard resides in Connecticut, is a

16 Shareholder, Director, and Officer of Frost, and that he routinely conducted business on behalf

17 of Frost, but deny the remaining allegations of Paragraph 3 of the FAC.

18   4.    Defendants admit that Defendant Frigstad resides in California and is a

19 Shareholder, Director, and Officer of Frost, but deny the remaining allegations of Paragraph 4

20 of the FAC.

21   5.    Defendants lack sufficient knowledge or information to form a belief concerning

22 the truth of the allegations contained in Paragraph 5 of the FAC and therefore deny them.

23   6.    Defendants respond that Paragraph 6 of the FAC contains no factual allegations

24 and therefore requires no response.

25

26

27

28

---

[1] For convenience and clarity, Defendants' Answer utilizes the same headings as set forth in the FAC. In so doing, Defendants do not admit any of the allegations contained in Plaintiff's headings.

7.     Defendants respond that Paragraph 7 of the FAC contains conclusions of law to which no response is required.  To the extent that any response is required, Defendants deny the allegations.

## JURISDICTION

8.     Defendants respond that Paragraph 8 of the FAC contains conclusions of law to which no response is required.  To the extent that any response is required, Defendants admit that the Court has subject-matter jurisdiction over this action.

## DIVISIONAL ASSIGNMENT

9.     Defendants respond that Paragraph 9 of the FAC contains conclusions of law to which no response is required.  To the extent that any response is required, Defendants admit that venue is proper in this judicial district.

## GENERAL ALLEGATIONS

10.     Defendants admit that Defendant Frost is a privately held research, data analytics, and consulting firm with offices throughout the world.

11.     Defendants admit that Defendants Frigstad and Bravard each hold 41% of Frost's shares.  Defendants further admit that the Frost & Sullivan Institute is a non-profit organization founded by Defendant Frigstad, who serves as its Executive Director. Defendants deny the remaining allegations of Paragraph 11 of the FAC.

12.     Admitted.

13.     Defendants admit that Plaintiff Huntsman began employment with Frost in August 2019 as Frost's Chief Operating Officer, subsequently served as Frost's Chief Executive Officer, and was terminated from that position effective December 31, 2022, but deny the remaining allegations of Paragraph 13 of the FAC.

14.     Defendants admit that Defendants Frigstad and Bravard are Frost's co-founders and two of its board members and that they approved Mr. Huntsman's compensation structure. Defendants deny the remaining allegations of Paragraph 14 of the FAC.

15.    Defendants admit that Plaintiff's employment agreement included an annual base salary of $275,000 and a possible bonus structure, but deny the remaining allegations of Paragraph 15 of the FAC.

16.    Admitted.

17.    Denied.

18.    Defendants deny that they promised Plaintiff any equity or bonus, both of which were subject to certain conditions, as set forth in Mr. Huntsman's employment agreement. Defendants lack sufficient knowledge or information to form a belief concerning the truth of the remaining allegations contained in Paragraph 18 of the FAC and therefore deny them.

19.    Denied.

20.    Denied.

21.    Denied.

22.    Denied.

23.    Defendants admit that Frost was profitable in 2021 but deny the remaining allegations of Paragraph 23 of the FAC.

24.    Defendants admit that, at the direction of the board, Mr. Huntsman implemented pay cuts in April 2020.  Defendants further admit that, per the board's plan, Mr. Huntsman restored employee compensation by August 2021.  Defendants deny the remaining allegations of Paragraph 24 of the FAC.

25.    Admitted.

26.    Defendants admit that Frost was profitable in 2021 and 2022 but deny the remaining allegations of Paragraph 26 of the FAC.

27.    Defendants admit that Frost was profitable in 2021 and 2022 (although significantly below target) but deny the remaining allegations of Paragraph 27 of the FAC.

28.    Defendants admit that Mr. Gens was of the opinion that Frost did not qualify for a PPP2 loan.  Defendants further admit that Mr. Srinivasan subsequently determined that Frost could indeed be eligible for a PPP2 loan.  Defendants lack sufficient knowledge or information

to form a belief concerning the truth of the remaining allegations contained in Paragraph 28 of the FAC and therefore deny them.

29.    Defendants admit that Defendant Bravard, on behalf of Frost, applied for and obtained a PPP2 loan in the amount of $2 million.  Defendants lack sufficient knowledge or information to form a belief concerning the truth of the remaining allegations contained in Paragraph 29 of the FAC and therefore deny them.

30.    Defendants deny that the PPP2 loan application contained falsified information. Defendants lack sufficient knowledge or information to form a belief concerning the truth of the remaining allegations contained in Paragraph 30 of the FAC and therefore deny them.

31.    Denied.

32.    Defendants admit that Mr. Huntsman hired a private law firm to perform an independent investigation.  Defendants deny the remaining allegations in Paragraph 32 of the FAC.

33.    Defendants deny that Defendant Frigstad, Defendant Bravard, or Mr. Srinivasan concealed any transactions from Frost's senior lender where the senior lender's consent was required.  Defendants lack sufficient knowledge or information to form a belief concerning the truth of the remaining allegations contained in Paragraph 33 of the FAC and therefore deny them.

34.    Denied.

35.    Defendants lack sufficient knowledge or information to form a belief concerning the truth of the allegations contained in Paragraph 35 of the FAC and therefore deny them.

36.    Defendants admit that, during Plaintiff's employment at Frost, Frost paid Defendant Bravard, Defendant Frigstad, and Mr. Srinivasan in accordance with their employment contracts.  Defendants deny the remaining allegations in Paragraph 36 of the FAC.

37.    Defendants deny that Defendant Frigstad or Defendant Bravard ran fraudulent expenses through Frost, claimed improper tax deductions for personal expenses, or refused to pay Mr. Huntsman, other executives, or other Frost employees their earned compensation.

Defendants lack sufficient knowledge or information to form a belief concerning the truth of the remaining allegations contained in Paragraph 37 of the FAC and therefore deny them.

38.    Defendants admit that Defendants Frigstad and Bravard together hold a supermajority of Frost's shares.  Defendants further admit that Defendants Frigstad and Bravard convened a shareholder meeting in June of 2021, during which they adopted revised by-laws, reconstituted the board of directors, and dissolved the identified oversight committees.  Defendants further admit that Defendants Frigstad and Bravard terminated the independent law firm investigation initiated by Mr. Huntsman without approval from the board.  Defendants deny the remaining allegations of Paragraph 38 of the FAC.

39.    Defendants admit that Defendant Frigstad created an Executive Board comprised of Defendant Bravard, Defendant Frigstad, Mr. Srinivasan, and Mr. Zutshi.  Defendants further admit that the purpose of the Executive Board is to provide strategic oversight and guidance to the entire Frost & Sullivan Team.  Defendants further admit that Mr. Huntsman was not invited to be involved in the Executive Board.  Defendants deny the remaining allegations of Paragraph 39 of the FAC.

40.    Defendants admit that in October 2021 Frost was reincorporated under the laws of Delaware.  Defendants further admit that Mr. Huntsman was not consulted about the reincorporation by Defendant Frigstad, Defendant Bravard, or the other two Executive Board members.  Defendants further admit that Mr. Huntsman was not registered as an officer of the company or its CEO.  Defendants deny the remaining allegations of Paragraph 40 of the FAC.

41.    Denied.

42.    Denied.

43.    Defendants lack sufficient knowledge or information to form a belief concerning the truth of the allegations contained in Paragraph 43 of the FAC and therefore deny them.

44.    Defendants lack sufficient knowledge or information to form a belief concerning the truth of the allegations contained in Paragraph 44 of the FAC and therefore deny them.

45.    Defendants Bravard and Frigstad deny that they promised Mr. Huntsman any equity, failed to honor equity plans, failed to pay Frost employees their earned compensation,

or "bullied" employees in any way.  Defendants admit that Mr. Huntsman made a proposal to exchange any equity he may have been given for the ability to develop a new product line venture using Frost's resources.  Defendants further admit that, after discovering Mr. Huntsman had abused his position to misappropriate Frost's money and trade secrets, they realized that Mr. Huntsman needed to be precluded from using Frost's resources any further. Defendants further admit that no agreement was entered regarding any equity in Frost that Mr. Huntsman may have been given.  Defendants deny the remaining allegations of Paragraph 45 of the FAC.

46.    Defendants admit that Plaintiff's employment terminated effective December 31, 2022, but deny the remaining allegations of Paragraph 46 of the FAC.

47.    Denied.

48.    Defendants admit that on October 30, 2020, Defendant Frost and Mr. Huntsman executed the Indemnification Agreement attached to Mr. Huntsman's FAC as Exhibit 2. Defendants deny the remaining allegations of Paragraph 48 of the FAC.

49.    Defendants admit that the Indemnification Agreement Recital A contains the language quoted in this paragraph.  Defendants deny the remaining allegations of Paragraph 49 of the FAC.

50.    Defendants admit that the Indemnification Agreement contains the language quoted in this paragraph.  Defendants deny the remaining allegations of Paragraph 50 of the FAC.

51.    Defendants admit that Section 3.1 of the Indemnification Agreement contains the language quoted in Paragraph 51 of the FAC.  Defendants deny the remaining allegations of Paragraph 51 of the FAC.

52.    Defendants admit that the Indemnification Agreement contains the language quoted in Paragraph 52 of the FAC.  Defendants deny the remaining allegations of Paragraph 52 of the FAC.

53.    Defendants admit that the Indemnification Agreement contains the language quoted in Paragraph 53 of the FAC.  Defendants further admit that the Indemnification

Agreement states that "serving at the request of the Company" requires Mr. Huntsman to have "acted in good faith."

54.     Defendants admit that the Indemnification Agreement includes the language quoted in Paragraph 54 of the FAC.  Defendants further admit that the Indemnification Agreement states that "serving at the request of the Company" requires Mr. Huntsman to have "acted in good faith."

55.     Defendants admit that the Indemnification Agreement includes the language quoted in Paragraph 55 of the FAC.  Defendants deny the remaining allegations of Paragraph 55 of the FAC.

56.     Defendants admit that the Indemnification Agreement includes the language quoted in Paragraph 56 of the FAC.  Defendants deny the remaining allegations of Paragraph 56 of the FAC.

57.     Defendants admit that the Indemnification Agreement includes the language quoted in Paragraph 57 of the FAC.

58.     Defendants admit that the Indemnification Agreement includes the language quoted in Paragraph 58 of the FAC.

59.     Denied.

60.     Defendants admit that the Indemnification Agreement includes the language quoted in Paragraph 60 of the FAC.  Defendants deny the remaining allegations of Paragraph 60 of the FAC.

61.     Defendants admit that the Indemnification Agreement includes the language quoted in Paragraph 61 of the FAC.  Defendants deny the remaining allegations in Paragraph 61 of the FAC.

62.     Defendants admit that the Indemnification Agreement includes the language quoted in Paragraph 62 of the FAC.  Defendants deny the remaining allegations of Paragraph 62 of the FAC.

63.     Defendants admit that the Indemnification Agreement includes the language quoted in Paragraph 63 of the FAC.  Defendants further admit that Mr. Huntsman sent Frost a

letter regarding his indemnity claim on December 6, 2023.  Defendants deny the remaining allegations of Paragraph 63 of the FAC.

64.     Defendants admit that the Indemnification Agreement includes the language quoted in Paragraph 64 of the FAC.  Defendants deny the remaining allegations of Paragraph 64 of the FAC.

65.     Defendants admit that the Indemnification Agreement includes the language quoted in Paragraph 65 of the FAC.  Defendants deny the remaining allegations of Paragraph 65 of the FAC.

66.     Defendants admit that the Indemnification Agreement includes the language quoted in Paragraph 66 of the FAC.  Defendants deny the remaining allegations of Paragraph 66 of the FAC.

67.     Defendants admit that on September 18, 2023, Defendant Frost initiated a lawsuit against Mr. Huntsman alleging that Mr. Huntsman had used his position as CEO to award Frost contracts to third-party companies and used Frost's resources and trade secrets to develop technology and products which Mr. Huntsman intended to misappropriate. Defendants deny that these allegations were false or wrong.

68.     Denied.

69.     Admitted.

## FIRST CAUSE OF ACTION
### (Breach of Contract – Against All Defendants)

70.     In response to Paragraph 70 of the FAC, Defendants incorporate by reference the answers and responses to the preceding paragraphs as though fully set forth herein.

71.     Defendants admit that Plaintiff began employment with Frost in August 2019, served as Frost's Chief Executive Officer, and was terminated from that position effective December 31, 2022, but deny the remaining allegations of Paragraph 71 of the FAC.

72.     Defendants respond that Paragraph 72 of the FAC contains conclusions of law to which no response is required.

73.     Defendants admit that Plaintiff's employment agreement included an annual base salary, the future possibility of a bonus, the future possibility of equity in the company, and benefits such as medical, dental, vision, life insurance, disability plans, paid vacation and sick leave, paid holidays, and 401(k) benefits, but deny the remaining allegations of Paragraph 73 of the FAC.

74.     Denied.

75.     Defendants deny that they promised Plaintiff any equity or bonus, both of which were subject to certain conditions, as set forth in Mr. Huntsman's employment agreement. Defendants lack sufficient knowledge or information to form a belief concerning the truth of the remaining allegations contained in Paragraph 75 of the FAC and therefore deny them.

76.     Defendants deny that they promised Plaintiff any equity.  Defendants lack sufficient knowledge or information to form a belief concerning the truth of the remaining allegations contained in Paragraph 76 of the FAC and therefore deny them.

77.     Denied.

78.     Denied.

79.     Denied.

80.     Denied.

81.     Denied.

82.     Denied.

## SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing – Against All Defendants)

83.     In response to Paragraph 83 of the FAC, Defendants incorporate by reference the answers and responses to the preceding paragraphs as though fully set forth herein.

84.     Defendants respond that Paragraph 84 of the FAC contains conclusions of law to which no response is required.

85.     Defendants respond that Paragraph 85 of the FAC contains conclusions of law to which no response is required.

86.     Defendants admit that Plaintiff's employment agreement included an annual base salary, the future possibility of a bonus, the future possibility of equity in the company, and benefits such as medical, dental, vision, life insurance, disability plans, paid vacation and sick leave, paid holidays, and 401(k) benefits, but deny the remaining allegations of Paragraph 86 of the FAC.

87.     Denied.

88.     Defendants deny that they promised Plaintiff any equity or bonus, both of which were subject to certain conditions, as set forth in Mr. Huntsman's employment agreement. Defendants lack sufficient knowledge or information to form a belief concerning the truth of the remaining allegations contained in Paragraph 88 of the FAC and therefore deny them.

89.     Defendants deny that they promised Plaintiff any equity.  Defendants lack sufficient knowledge or information to form a belief concerning the truth of the remaining allegations contained in Paragraph 89 of the FAC and therefore deny them.

90.     Denied.

91.     Defendants admit that Frost agreed to pay Mr. Huntsman a salary.  Defendants deny that they promised Plaintiff any equity or bonus, both of which were subject to certain conditions, as set forth in Mr. Huntsman's employment agreement.

92.     Denied.

93.     Denied.

### THIRD CAUSE OF ACTION

### (Fraudulent Inducement – Against All Defendants)

94.     In response to Paragraph 94 of the FAC, Defendants incorporate by reference the answers and responses to the preceding paragraphs as though fully set forth herein.

95.     Defendants admit that Mr. Huntsman negotiated with Defendant Frost, Defendant Frigstad, and Defendant Bravard prior to accepting his position at Frost and they agreed to the terms of his employment.  Defendants further admit that Frost agreed to pay Mr. Huntsman a salary of $275,000 per year.  Defendants deny that they promised Plaintiff any

1    equity or bonus, both of which were subject to certain conditions, as set forth in Mr.

2    Huntsman's employment agreement.

3        96.    Defendants admit that Plaintiff began employment with Frost in August 2019 as

4    Frost's Chief Operating Officer and later served as Frost's Chief Executive Officer, but deny

5    the remaining allegations of Paragraph 96 of the FAC.

6        97.    Denied.

7        98.    Defendants deny that they promised Plaintiff any equity or bonus, both of which

8    were subject to certain conditions, as set forth in Mr. Huntsman's employment agreement.

9    Defendants lack sufficient knowledge or information to form a belief concerning the truth of

10   the remaining allegations contained in Paragraph 98 of the FAC and therefore deny them.

11       99.    Denied.

12       100.   Denied.

13       101.   Denied.

14       102.   Denied.

15              **FOURTH CAUSE OF ACTION**

16        **(Promissory Estoppel – Against All Defendants)**

17                **(Pled in the Alternative)**

18       103.   In response to Paragraph 103 of the FAC, Defendants incorporate by reference

19   the answers and responses to the preceding paragraphs as though fully set forth herein.

20       104.   Defendants admit that Plaintiff's employment agreement included an annual

21   base salary, the future possibility of a bonus, and the future possibility of equity in the

22   company, but deny the remaining allegations of Paragraph 104 of the FAC.

23       105.   Defendants admit that Plaintiff's employment agreement included an annual

24   base salary, the future possibility of a bonus, and the future possibility of equity in the

25   company, but deny the remaining allegations of Paragraph 105 of the FAC.

26       106.   Denied.

27       107.   Denied.

28       108.   Denied.

**FIFTH CAUSE OF ACTION**

**(Wrongful Discharge in Violation of Public Policy – Against All Defendants)**

109.   In response to Paragraph 109 of the FAC, Defendants incorporate by reference the answers and responses to the preceding paragraphs as though fully set forth herein.

110.   Admitted.

111.   Admitted.

112.   Defendants admit that PPP2 loans were provided by the U.S. Government for the purpose of assisting businesses continuing to struggle due to the COVID-19 pandemic, but deny the remaining allegations of Paragraph 112 of the FAC.

113.   Denied.

114.   Denied.

115.   Denied.

116.   Denied.

**SIXTH CAUSE OF ACTION**

**(Retaliation – Against All Defendants)**

117.   In response to Paragraph 117 of the FAC, Defendants incorporate by reference the answers and responses to the preceding paragraphs as though fully set forth herein.

118.   Defendants respond that Paragraph 118 of the FAC contains conclusions of law to which no response is required.

119.   Defendants respond that Paragraph 119 of the FAC contains conclusions of law to which no response is required.

120.   Defendants respond that Paragraph 120 of the FAC contains conclusions of law to which no response is required.

121.   Defendants respond that Paragraph 121 of the FAC contains conclusions of law to which no response is required.

122.   Defendants respond that Paragraph 122 of the FAC contains conclusions of law to which no response is required.

1    123.   Defendants admit that Defendants Frigstad and Bravard founded Frost, serve on

2  its Board, and hold a majority of Frost's shares, but deny the remaining allegations of

3  Paragraph 123 of the FAC.

4    124.   Denied.

5    125.   Denied.

6    126.   Denied.

7    127.   Denied.

8                              **SEVENTH CAUSE OF ACTION**

9                    **(Restitution/Unjust Enrichment – Against All Defendants)**

10    128.   In response to Paragraph 128 of the FAC, Defendants incorporate by reference

11  the answers and responses to the preceding paragraphs as though fully set forth herein.

12    129.   Denied.

13    130.   Denied.

14    131.   Denied.

15    132.   Denied.

16                              **EIGHTH CAUSE OF ACTION**

17                         **(Conversion – Against All Defendants)**

18    133.   In response to Paragraph 133 of the FAC, Defendants incorporate by reference

19  the answers and responses to the preceding paragraphs as though fully set forth herein.

20    134.   Denied.

21    135.   Denied.

22    136.   Denied.

23    137.   Denied.

24    138.   Denied.

25    139.   Denied.

26

27

28

## NINTH CAUSE OF ACTION

### (Accounting – Against All Defendants)

140.   In response to Paragraph 140 of the FAC, Defendants incorporate by reference the answers and responses to the preceding paragraphs as though fully set forth herein.

141.   Denied.

142.   Denied.

## TENTH CAUSE OF ACTION

### (California Unfair Competition Law – Against All Defendants)

143.   In response to Paragraph 143 of the FAC, Defendants incorporate by reference the answers and responses to the preceding paragraphs as though fully set forth herein.

144.   Defendants respond that Paragraph 144 of the FAC contains conclusions of law to which no response is required.

145.   Denied.

146.   Denied.

147.   Defendants lack sufficient knowledge or information to form a belief concerning the truth of the allegations contained in Paragraph 147 of the FAC and therefore deny them.

148.   Denied.

149.   Defendants lack sufficient knowledge or information to form a belief concerning the truth of the allegations contained in Paragraph 149 of the FAC and therefore deny them.

150.   Defendants lack sufficient knowledge or information to form a belief concerning the truth of the allegations contained in Paragraph 150 of the FAC and therefore deny them.

## ELEVENTH CAUSE OF ACTION

### (Breach of Fiduciary Duty – Against Mr. Frigstad, Mr. Bravard, and Does 1-10)

151.   In response to Paragraph 151 of the FAC, Defendants incorporate by reference the answers and responses to the preceding paragraphs as though fully set forth herein.

152.   Defendants admit that Defendant Bravard is a Shareholder, Director, and Officer of Frost.  Defendants further admit that Defendant Frigstad is a Shareholder, Director, and Officer of Frost.  Defendants deny the remaining allegations of Paragraph 152 of the FAC.

153.   Denied.

154.   Denied.

155.   Defendants respond that Paragraph 155 of the FAC contains conclusions of law to which no response is required.

156.   Denied.

157.   Denied.

**TWELFTH CAUSE OF ACTION**

**(Violation of Cal. Labor Code § 202 – Unpaid Wages – Against All Defendants)**

158.   In response to Paragraph 158 of the FAC, Defendants incorporate by reference the answers and responses to the preceding paragraphs as though fully set forth herein.

159.   Defendants respond that Paragraph 159 of the FAC contains conclusions of law to which no response is required.

160.   Defendants respond that Paragraph 160 of the FAC contains conclusions of law to which no response is required.

161.   Defendants respond that Paragraph 161 of the FAC contains conclusions of law to which no response is required.

162.   Denied.

163.   Denied.

**THIRTEENTH CAUSE OF ACTION**

**(Violation of Cal. Labor Code §§ 202 & 203 – Waiting Time Penalties –**

**Against All Defendants)**

164.   In response to Paragraph 164 of the FAC, Defendants incorporate by reference the answers and responses to the preceding paragraphs as though fully set forth herein.

165.   Defendants respond that Paragraph 165 of the FAC contains conclusions of law to which no response is required.

166.   Denied.

167.   Denied.

**FOURTEENTH CAUSE OF ACTION**

**(Breach of Indemnification Agreement – Against Frost)**

168.   In response to Paragraph 168 of the FAC, Defendants incorporate by reference the answers and responses to the preceding paragraphs as though fully set forth herein.

169.   Denied.

170.   Defendants admit that on October 30, 2020, Defendant Frost and Mr. Huntsman executed the Indemnification Agreement attached to Mr. Huntsman's FAC as Exhibit 2. Defendants deny the remaining allegations of Paragraph 170 of the FAC.

171.   Defendants admit that the Indemnification Agreement contains the language quoted in Paragraph 171 of the FAC.  Defendants deny the remaining allegations of Paragraph 171 of the FAC.

172.   Defendants respond that Paragraph 172 of the FAC contains conclusions of law to which no response is required.

173.   Defendants admit that on September 18, 2023, Defendant Frost initiated a lawsuit against Mr. Huntsman alleging that Mr. Huntsman had used his position as CEO to award Frost contracts to third-party companies and used Frost's resources and trade secrets to develop technology and products which Mr. Huntsman intended to misappropriate. Defendants deny that these allegations were false or wrong.

174.   Denied.

175.   Defendants admit that the Indemnification Agreement contains the language quoted in Paragraph 175 of the FAC.  Defendants deny the remaining allegations of Paragraph 175 of the FAC.

176.   Defendants respond that Paragraph 176 of the FAC contains conclusions of law to which no response is required.  To the extent that any response is required, Defendants deny the allegations contained in Paragraph 176 of the FAC.

177.   Defendants respond that Paragraph 177 of the FAC contains conclusions of law to which no response is required.  To the extent that any response is required, Defendants deny the allegations contained in Paragraph 177 of the FAC.

178.   Admitted.

179.   Defendants respond that Paragraph 179 of the FAC contains conclusions of law to which no response is required.  To the extent that any response is required, Defendants deny the allegations contained in Paragraph 179 of the FAC.

180.   Defendants respond that Paragraph 180 of the FAC contains conclusions of law to which no response is required.  To the extent that any response is required, Defendants deny the allegations contained in Paragraph 180 of the FAC.

181.   Defendants respond that Paragraph 181 of the FAC contains conclusions of law to which no response is required.  To the extent that any response is required, Defendants deny the allegations contained in Paragraph 181 of the FAC.

182.   Defendants respond that Paragraph 182 of the FAC contains conclusions of law to which no response is required.  To the extent that any response is required, Defendants deny the allegations contained in Paragraph 182 of the FAC.

183.   Defendants respond that Paragraph 183 of the FAC contains conclusions of law to which no response is required.  To the extent that any response is required, Defendants deny the allegations contained in Paragraph 183 of the FAC.

184.   Denied.

185.   Defendants lack sufficient knowledge or information to form a belief concerning the truth of the allegations contained in Paragraph 185 of the FAC and therefore deny them.

## PRAYER FOR RELIEF

The remaining allegations contained in Plaintiff's Prayer for Relief require no response.  To the extent the Prayer for Relief requires a response to any allegations contained therein, Defendants deny that they are liable to Plaintiff for any claimed damages or costs. Defendants further deny that Plaintiff is entitled to any relief sought from this Court in his Prayer from or relating to Defendants.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses to the Complaint.  Nothing stated herein is intended or shall be construed as an acknowledgement that any particular issue or

subject matter is relevant to Plaintiff's allegations.  Defendants assert the following affirmative defenses without prejudice to their position that they do not have the burden of proof or persuasion to establish these defenses to the extent that the burden on the issue rests with Plaintiff as a matter of law.  Defendants reserve the right to amend their Answer to assert additional affirmative defenses that may be identified in the course of further investigation, discovery, or litigation of this action.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's damages, to the extent he suffered any, are the result of his own conduct and/or the conduct of third parties over whom Defendants exercise no control.

## THIRD AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, because Plaintiff has not suffered an actual injury or damages due to Defendants' conduct.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery of any damages because of and to the extent of his failure to mitigate damages.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the alleged damages, if any, are speculative and because of the impossibility of ascertaining and allocating those alleged damages.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because Defendants acted in good faith at all times in their dealings with Plaintiff and did not engage in willful, wanton, malicious, or reckless conduct so as to justify an award of punitive damages.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because he failed to comply with his material obligations under his employment agreement.

1

## EIGHTH AFFIRMATIVE DEFENSE

2

Plaintiff's claims are barred because he violated the implied covenant of good faith and

3

fair dealing, as applied to his contractual obligations under his employment agreement.

4

## NINTH AFFIRMATIVE DEFENSE

5

Plaintiff's claims are barred because Defendants' performance relating to Plaintiff's

6

employment agreement was excused when Plaintiff breached the contract and/or breached the

7

implied covenant of good faith and fair dealing.

8

## TENTH AFFIRMATIVE DEFENSE

9

Plaintiff's claims are barred under the doctrines of estoppel, laches, waiver, unclean

10

hands, and/or other applicable equitable doctrines.

11

12

## COUNTERCLAIMS

13

Frost & Sullivan Inc. ("Frost" or "Counterclaim-Plaintiff"), on personal knowledge as

14

to its own acts, and on information and belief as to all others based on its own and its

15

attorneys' investigation, alleges Counterclaims against Darrell Huntsman ("Mr. Huntsman" or

16

"Counterclaim-Defendant") as follows:

17

## NATURE OF THE ACTION

18

1.      Frost brings these claims against its former Chief Executive Officer, Darrell

19

Huntsman.  For more than two years, Mr. Huntsman abused his position as CEO to mislead

20

and defraud Frost.  Despite his representation and reassurances that he was working for Frost's

21

benefit—as he was legally obligated to do as Frost's CEO—, Mr. Huntsman instead engaged

22

in a surreptitious effort to (1) embezzle over $1,000,000 to his personal contact in a third party

23

company, (2) secretly have Frost pay for software development to benefit his own planned

24

company ("NewCo"); (3) gave NewCo access to Frost's highly confidential and proprietary

25

data; and (4) misappropriate Frost's trade secrets, for his personal benefit and the benefit of

26

NewCo.

27

2.      As detailed below, Mr. Huntsman embezzled Frost's money by entering into a

28

no-bid, $45,000-$60,000 per month contract with Endeavor, whose CEO was a long-time

friend of Mr. Huntsman.  Over the course of nearly two years, Frost paid Endeavor over $1,000,000 for which Frost received a substandard, largely unusable platform that should have cost a small fraction of the $1,000,000 investment.  Mr. Huntsman also created significant risk for Frost by enabling Endeavor to maintain control of Frost assets supported by this investment, including the source code, server accounts and third-party applications and software.

3.      Moreover, Mr. Huntsman used Endeavor to funnel at least $55,000 to a secret project with a third-party software developer, Exaptive, Inc. ("Exaptive").  Upon further investigation, Frost learned that Mr. Huntsman then traveled to Saudi Arabia (using Frost's money) to solicit funding from Frost's long-time client Saudi Aramco for NewCo, using the proof of concept that Exaptive created (with Frost's money).

4.      Frost, hereby, brings this action to vindicate its rights and recover damages that it is entitled to under the law.

### PARTIES

5.      Plaintiff Frost is a Delaware corporation and has its principal place of business in San Antonio, Texas.  The address of the registered office of Frost is 7550 1H, 10 W Drive, Suite 400, San Antonio, TX 78229.

6.      Defendant Darrell Huntsman is a former employee of Frost.  Upon information and belief, Mr. Huntsman is a resident of Salt Lake City, Utah and resides at 1919 S 4800 E Heber City, UT 84032.  As CEO of Frost, and for most times relevant to this complaint, Mr. Huntsman was based out of Frost's San Antonio, Texas office.

### JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including 18 U.S.C. § 1836(c).

8.      This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      This Court has supplemental jurisdiction over the remaining claims asserted herein pursuant to 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as the federal claim.

10.     Under 28 U.S.C. § 1391(b)(2), venue is proper in this judicial district because a substantial part of the events giving rise to the counterclaims occurred within this district.

## FACTUAL BACKGROUND

### A.   Formation of Frost

11.     Frost & Sullivan is a research, data analytics, and consulting firm.  Since its founding in 1961, Frost has been a pioneer and leader in market research and consulting.

12.     Today, Frost employs approximately 1,200 employees.  Frost's offices are located throughout the world in North America, South America, Europe, Africa, and Asia.

13.     Frost provides consulting services, research, and data analytics in a wide array of industries including aerospace and defense, chemicals, materials and nutrition, energy and environment, healthcare, industrial, information and communications technology, mobility, security, and supply chain and logistics.

14.     Frost offers its industry-leading services through proprietary methods and information, which involves the deep analysis of markets, technologies, economies related to trends and opportunities, forecasts, and competitive analysis.  Frost's services are organized by industry, product, and technology, and can even be tailored to specific clients.  Frost has developed its research, analytics, and consulting model based on decades of experience in the field.  Therefore, Frost's data and analysis is highly confidential.

15.     Public disclosure of Frost's confidential information would lead to significant and irreparable harm.  Therefore, Frost's data is not disseminated outside of Frost without explicit consent and is not publicly available.

### B.   Huntsman Joins Frost in 2019

16.     In 2019, Frost engaged with a private equity firm named Satori Capital ("Satori") to raise additional capital to expand its operations.  Mr. Huntsman was an unpaid

representative of Satori at the time.  While Frost's deal with Satori eventually fell through, Satori recommended that Frost hire Mr. Huntsman.

17.    In 2019, Mr. Huntsman joined Frost as its new Chief Operating Officer.  Mr. Huntsman subsequently became Frost's Chief Executive Officer.

18.    In or around June of 2020, Mr. Huntsman was appointed to Frost's Board of Directors.

## C.    Huntsman Embezzles Over $1,000,000 to A Friend at Endeavor Through a No-Bid Contract

19.    In or around May 2021, Mr. Huntsman led the development of a new analytics portal for Frost that would allegedly streamline content creation and delivery, thereby enhancing Frost's customer experience.  Despite his representations and legal obligations to act in the best interest of Frost, Mr. Huntsman's actual actions indicate that he engaged in this project solely to benefit NewCo, Mr. Huntsman, and his business collaborators.

20.    First, Mr. Huntsman did not consult Frost's IT department regarding this project, even though the IT department is trained and knowledgable about Frost's current platform.  It is likely that Frost's own IT department could have developed the portal in-house or otherwise guided a third-party vendor on the development, thereby saving Frost significant money.  Instead, Mr. Huntsman engaged a Turkish company, Endeavor Technology ("Endeavor"), to create the new analytics portal.

21.    Second, contrary to Frost's internal policies which require that the person overseeing any significant project obtain competitive bids from multiple potential contractors, Mr. Huntsman did not solicit bids from other contractors before engaging with Endeavor.  Upon information and belief, Mr. Huntsman was aware of this policy because he had led several other projects involving third parties, and he obtained competitive bids in each of the other projects.  Upon information and belief, Mr. Huntsman also knew that Frost does not allow any exceptions to this requirement.

22.    Upon information and belief, Mr. Huntsman engaged with Endeavor in a no-bid contract because Endeavor's CEO was Mr. Huntsman's longtime friend.

23.     Third, Mr. Huntsman's contract with Endeavor was barebones, bereft of any concrete timelines or deliverables.  Ultimately, Frost's analytics portal project served as a cash-cow for Endeavor's CEO, allowing Mr. Huntsman's longtime friend to collect monthly payments of $45,000 to $60,000 for nearly two years while doing little work to justify the expense.  In fact, each time Frost's Board of Directors tried to get insight into the status of the development of the analytics portal project, Mr. Huntsman intentionally blocked the Board's inquiries and reassured the Board members that the project was proceeding as planned.

24.     In total, Frost paid over $1,000,000 to Endeavor for the analytics portal project, yet the software that was delivered lacked most of the key functionalities that Mr. Huntsman had promised.  Upon information and belief, Mr. Huntsman knew or should have known that the product that Endeavor developed was not worth $1,000,000, and that Frost grossly overpaid Endeavor.

**D.     Mr. Huntsman Uses Endeavor To Divert Frost Money To Exaptive to Develop Software For NewCo**

25.     Upon information and belief, in or around January 2022, Endeavor (at the direction of Mr. Huntsman) engaged a software development company, Exaptive, to develop a proof of concept for a new AI engine.  In particular, Mr. Huntsman arranged for at least $55,000 paid by Frost to Endeavor to be diverted to Exaptive for its work on the AI project.

26.     For at least the reasons identified below, Frost is informed and believes, and thereon alleges, that the secret Exaptive project was intended to benefit NewCo rather than Frost.

27.     First, although the Statement of Work with Exaptive states that the project was on behalf of "Frost and Sullivan" for a project named "Frost & Sullivan Newco," the Statement of Work was signed by Endeavor, payments were made through Endeavor, and the Frost Board had no knowledge of the secret Exaptive project.

28.     Second, Mr. Huntsman used his personal Gmail account to communicate with Exaptive and Endeavor rather than his Frost company email.

29.     Third, on the Exaptive project, Mr. Huntsman worked in concert with Abrar Hussain, a former Frost Board member who at all relevant times had no position or role at Frost and indeed had been removed from the Frost Board shortly before the events in question.

30.     Fourth, Exaptive's AI engine is completely unrelated to the analytics portal project that Endeavor was allegedly building.

31.     Fifth, upon information and belief, Exaptive's AI engine was unrelated to any other project that Mr. Huntsman was developing at Frost.

32.     Sixth, in or around June 2022, Mr. Huntsman arranged a meeting with Frost's longtime client Saudi Aramco, for the purpose of securing funding for NewCo as well as a project for NewCo.  Present at this meeting were Mr. Huntsman, Mr. Hussain, and David King, CEO of Exaptive, among others.  Upon information and belief, Mr. Huntsman directed Mr. King to demonstrate the Exaptive AI engine to Saudi Aramco, and Mr. Huntsman represented to Saudi Aramco that the Exaptive AI engine would be a key feature of NewCo.

**E.     Mr. Huntsman Grants Exaptive Access to Frost's Confidential API to Develop Software for NewCo**

33.     Upon information and belief, as part of Exaptive's software development efforts, in or around April 2022, Mr. Huntsman provided Exaptive with Frost's application programming interfaces ("API").

34.     Mr. Huntsman did this without Board approval, even though doing so allowed Exaptive access to Frost's highly confidential market data and analysis, which are its crown jewels.  More troubling is the fact that Exaptive had signed a statement of work with Endeavor and not Frost.  Therefore, Exaptive had no contractual relationship or obligations to Frost but was given full access to Frost's confidential market data and analysis.

35.     Given what Frost now knows about the arrangement among Mr. Huntsman, NewCo, Endeavor, and Exaptive, Frost is informed and believes that Mr. Huntsman intended to use the AI engine to leverage Frost's confidential information for the benefit of NewCo and himself.

**F.     Frost Uncovers Mr. Huntsman's Fraud and Misappropriation**

36.     In August 2023, Frost became aware of a $55,000 payment to Endeavor for an "AI Initiative."  When Frost reached out to Endeavor for an explanation regarding the scope of the project, Endeavor disclaimed any involvement in the project.  Instead, Endeavor explained that the money was directly re-routed to Exaptive at Mr. Huntsman's direction and that Endeavor explained that it was simply an intermediary.

**G.     Mr. Huntsman Recruits Employees to Leave Frost and Continues To Represent Himself as CEO of Frost After He Was Terminated**

37.     Upon information and belief, during the entire time Mr. Huntsman was the CEO of Frost, he also maintained his position as an Operating Partner of an investment company named RLG Capital.

38.     Upon information and belief, while he was still CEO of Frost, Mr. Huntsman approached and tried to recruit numerous Frost employees to leave Frost and join other companies with which Mr. Huntsman has a relationship.

39.     In addition, upon information and belief, Mr. Huntsman continued representing himself as CEO of Frost to Saudi Aramco through at least June 2023, in order to further his business interests and those of NewCo, even though his employment with Frost was terminated on December 31, 2022.

## COUNT I

## Misappropriation of Trade Secrets

**(Defense of Trade Secrets Act – 18 U.S.C. § 1831 *et seq.*; California Uniform Trade Secrets Act – California Civil Code § 3426.1 *et seq.*)**

40.     Frost restates and incorporates by reference each of the allegations set forth in Paragraphs 1-39 above as fully set forth herein.

41.     Frost is the owner of valuable trade secrets related to data and services used in, or intended for use in, interstate or foreign commerce.  Such trade secrets comprise Frost's financial, business, and economic information, including but not limited to data related to the analysis of markets, technologies, and economies related to trends, opportunities, forecasts,

and competitive analysis (the "Trade Secrets").  Frost's highly confidential APIs can be used to access this Trade Secret information.

42.     The Trade Secrets are not subject to public knowledge and not known to those in the field.  Nor are the Trade Secrets readily ascertainable by others in the field.

43.     Frost has taken reasonable measures to maintain the secrecy of the Trade Secrets as described above in Paragraph 15.

44.     The Trade Secrets derive independent economic value from not being generally known.

45.     The Trade Secrets implicate interstate and foreign commerce through, among other things, Frost's work across the United States and overseas, including in Saudi Arabia.

46.     Mr. Huntsman acquired, disclosed and/or used the Trade Secrets without Frost's express or implied consent by giving Exaptive access to Frost's confidential APIs without the approval of the Frost Board.  Frost is informed and believes, and thereon alleges, that Mr. Huntsman intended to use Frost's confidential information for his own benefit and has already done so.

47.     Mr. Huntsman also used improper means to acquire, disclose, and/or use the Trade Secrets by leveraging Frost's confidential business relationships to set up meetings with Saudi Aramco to the benefit of NewCo and to the harm of Frost.

48.     Mr. Huntsman's misappropriation of the Trade Secrets is in violation of the Defense of Trade Secrets Act and the California Uniform Trade Secrets Act.

49.     Mr. Huntsman's misappropriation of the Trade Secrets has caused Frost harm and financial losses, in an amount exceeding the jurisdictional minimum of this court, to be proven at trial.

## COUNT II
## Breach of Fiduciary Duty

50.     Frost restates and incorporates by reference each of the allegations set forth in Paragraphs 1-49 above as fully set forth herein.

51.     By virtue of his position as chief executive officer and as a member of the Board of Directors, Mr. Huntsman owed fiduciary duties of honesty and loyalty to Frost and its shareholders.

52.     Mr. Huntsman has breached his fiduciary duties.

53.     First, Mr. Huntsman failed to solicit bids for the software development project for creating an analytics portal for Frost, and instead paid over $1,000,000 to a company that he had personal connections to, which he knew was not in the best interests of Frost.

54.     Second, Mr. Huntsman hid the development of the Exaptive proof of concept from Frost by having Endeavor engage Exaptive and maintaining all communications with Exaptive through his personal Gmail account, in order to pursue the Exaptive project using Frost funds, all for the benefit of NewCo rather than Frost.

55.     Third, Mr. Huntsman caused at least $55,000 intended for the Endeavor project to be diverted to the secret Exaptive project.  Mr. Huntsman further misappropriated Frost's API and granted Exaptive access to Frost's Trade Secrets so that Exaptive could develop software for Mr. Huntsman's NewCo.

56.     Fourth, Mr. Huntsman leveraged the relationship with Frost's longtime client Saudi Aramco to try to secure funding for Mr. Huntsman's NewCo and to secure a lucrative consulting contract for NewCo.

57.     Fifth, while CEO of Frost, Mr. Huntsman actively recruited Frost's employees to leave Frost and join other companies with whom Mr. Huntsman enjoyed a relationship.

58.     Each of these actions show a clear failure by Mr. Huntsman to act in good faith and loyal behavior towards Frost.  Huntsman's disloyal conduct has harmed Frost in an amount exceeding the jurisdictional minimum of this court, to be proven at trial.

59.     Frost has been damaged and irreparably harmed by Mr. Huntsman's breach of fiduciary duty.  In addition to recovering actual damages, the Court should order Mr. Huntsman to disgorge all monies Frost paid him during the time he was in breach of his fiduciary duties.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT III

### Conversion

60.    Frost restates and incorporates by reference each of the allegations set forth in Paragraphs 1-59 above as fully set forth herein.

61.    Mr. Huntsman has wrongfully exercised dominion or control over, and/or wrongfully took, misappropriated, or converted Frost's personal property in denial of, or inconsistent with, Frost's rights in such property, to the detriment and damage of Frost in excess of the jurisdictional minimum of this Court.

62.    In particular, Mr. Huntsman used at least $55,000 of Frost funds to funnel payments to Exaptive to develop software that he intended to use to benefit NewCo rather than Frost.

63.    Moreover, as part of Exaptive's software development, Mr. Huntsman unlawfully misappropriated Frost's confidential information by giving Exaptive access to Frost's highly confidential APIs and thereby access to Frost's highly confidential and proprietary market data and analysis.

64.    Frost is, and always has been, the true, sole and exclusive owner of the funds which were improperly and without consent, wired to Exaptive.  Frost is also the true, sole owner of Frost's Trade Secrets, which were misappropriated by Mr. Huntsman to benefit his personal business venture.

65.    Mr. Huntsman willfully and without legal justification interfered with Frost's right to ownership of the funds and Frost's Trade Secrets.

66.    Frost at no time consented, expressly or impliedly, to Mr. Huntsman's wiring of funds to Exaptive, or the transmission of Frost's Trade Secrets to Exaptive.

67.    Frost has been damaged and irreparably harmed by Mr. Huntsman's conversion in an amount exceeding the jurisdictional minimum of this court, to be proven at trial.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT IV

## Claim for Damages

## (California Penal Code § 496)

68.     Frost restates and incorporates by reference each of the allegations set forth in paragraphs 1-67 above as fully set forth herein.

69.     Mr. Huntsman is liable to Frost under California Penal Code § 496, which allows civil damages for knowingly receiving property that was obtained in a manner constituting theft.  Penal Code § 496(a), (e).

70.     In particular, Mr. Huntsman used at least $55,000 of Frost funds to funnel payments to Exaptive to develop software that he intended to use to benefit NewCo rather than Frost.

71.     Moreover, as part of Exaptive's software development, Mr. Huntsman unlawfully misappropriated Frost's confidential information by giving Exaptive access to Frost's highly confidential APIs and thereby access to Frost's highly confidential and proprietary market data and analysis.

72.     Frost is, and always has been, the true, sole and exclusive owner of the funds which were improperly and without consent, wired to Exaptive.  Frost is also the true, sole owner of Frost's Trade Secrets, which were misappropriated by Mr. Huntsman to benefit his personal business venture.

73.     Therefore, Mr. Huntsman committed theft by fraudulently appropriating property which had been entrusted to him and by knowingly and designedly, by false or fraudulent representation or pretense, defrauding Frost of its money and personal property.

74.     Having committed this theft, Mr. Huntsman knowingly received Frost's stolen property.  Frost is entitled to recover treble damages, costs, and attorney's fees.

## COUNT V

## Fraud

75.     Frost restates and incorporates by reference each of the allegations set forth in paragraphs 1-74 above as fully set forth herein.

76.     Mr. Huntsman engaged in a wide-reaching fraudulent scheme to steal money and resources from Frost.

77.     For example, on or around May 2021, Mr. Huntsman made false material representations that the development of the Endeavor analytics portal project was done for the benefit of Frost and its customer base.  Contrary to his representations, Mr. Huntsman used the Endeavor project to line the pockets of the CEO of Endeavor, who is Mr. Huntsman's close friend.  In particular, he engaged Endeavor without soliciting competing bids, leading to Frost paying Endeavor over $1,000,000 to develop software that Mr. Huntsman knew or should have known was fundamentally lacking and not worth $1,000,000.

78.     Furthermore, contrary to his representations that the Endeavor analytics portal project was to benefit Frost, on or around March 2022, Mr. Huntsman diverted $55,000 of Frost's money to the secret Exaptive project to develop software for Mr. Huntsman's NewCo.

79.     In or around June 2022, Mr. Huntsman also represented that he was traveling to Saudi Arabia to develop business to benefit Frost.  However, he used Frost's money to pay for the trip in order to unlawfully solicit investments from Saudi Aramco to benefit Mr. Huntsman's NewCo.  Moreover, Mr. Huntsman solicited these investments by demonstrating the secret project that Exaptive developed with Frost's money.

80.     Mr. Huntsman intended to induce Frost to act upon the false representations.

81.     Had Frost known that Mr. Huntsman would use Frost's money and property to benefit himself and his associates, instead of Frost, Frost would not have made them available to Mr. Huntsman.  Frost relied on the false representations of Mr. Huntsman, which caused injury and harm to Frost.

**COUNT VI**

**Fraudulent Business Acts**

**(California Unfair Competition Law – Business and Professions Code § 17200 *et seq.*)**

82.     Frost restates and incorporates by reference each of the allegations set forth in paragraphs 1-81 above as fully set forth herein.

83.     Mr. Huntsman engaged in a wide-reaching fraudulent scheme to steal money and resources from Frost.

84.     For example, on or around May 2021, Mr. Huntsman made false material representations that the development of the Endeavor analytics portal project was done for the benefit of Frost and its customer base.  Contrary to his representations, Mr. Huntsman used the Endeavor project to line the pockets of the CEO of Endeavor, who is Mr. Huntsman's close friend.  In particular, he engaged Endeavor without soliciting competing bids, leading to Frost paying Endeavor over $1,000,000 to develop software that Mr. Huntsman knew or should have known was fundamentally lacking and not worth $1,000,000.

85.     Furthermore, contrary to his representations that the Endeavor analytics portal project was to benefit Frost, on or around March 2022, Mr. Huntsman diverted $55,000 of Frost's money to the secret Exaptive project to develop software for Mr. Huntsman's NewCo.

86.     In or around June 2022, Mr. Huntsman also represented that he was traveling to Saudi Arabia to develop business to benefit Frost.  However, he used Frost's money to pay for the trip in order to unlawfully solicit investments from Saudi Aramco to benefit Mr. Huntsman's NewCo.  Moreover, Mr. Huntsman solicited these investments by demonstrating the secret project that Exaptive developed with Frost's money.

87.     Mr. Huntsman intended to induce Frost to act upon the false representations.

88.     Had Frost known that Mr. Huntsman would use Frost's money and property to benefit himself and his associates, instead of Frost, Frost would not have made them available to Mr. Huntsman.  Frost relied on the false representations of Mr. Huntsman, which caused injury and harm to Frost.

## EXEMPLARY DAMAGES

89.     Frost restates and incorporates by reference each of the allegations set forth in paragraphs 1-88 above as fully set forth herein.

90.     As a result of Mr. Huntsman's breach of fiduciary duty, fraud, and conversion, Frost is entitled to recover exemplary damages from Mr. Huntsman.  Cal. Civ. Code § 3294(a).  Mr. Huntsman's conduct was both fraudulent and malicious.

1

**PRAYER FOR RELIEF**

2          WHEREFORE, Frost respectfully prays for judgment in favor of Frost and against

3    Mr. Huntsman as follows:

4          A.      Granting Frost Damages in an amount to be determined at trial.

5          B.      Granting a permanent injunction against Mr. Huntsman from using Frost's

6    confidential information to benefit NewCo or any other person or entity and unfairly compete

7    against Frost.

8          C.      Enhancing any actual damages for Mr. Huntsman's willful misappropriation of

9    trade secrets.

10          D.      Exemplary Damages.

11          E.      Granting Frost an award for all reasonable attorneys' fees and other costs and

12    expenses incurred.

13          F.      Granting Frost such other and further relief as the Court deems just and proper.

14

15    Dated:  February 15, 2024

16                                          WILMER CUTLER PICKERING
                                           HALE AND DORR LLP

17
                                            */s/ Mark D. Flanagan*
18                                         Mark D. Flanagan (SBN 130303)
                                              Mark.Flanagan@wilmerhale.com
19                                         Anh-Khoa Tran (SBN 295393)
                                              Khoa.Tran@wilmerhale.com
20                                         Alexis J. Pfeiffer (SBN 312007)
                                              Alexis.Pfeiffer@wilmerhale.com
21                                         Sarah E. Maciel (SBN 333410)
                                              Sarah.Maciel@wilmerhale.com
22                                         WILMER CUTLER PICKERING
                                              HALE AND DORR LLP
23                                         2600 El Camino Real, Suite 400
                                           Palo Alto, CA  94306
24                                         Telephone:  (650) 858-6000
                                           Facsimile:   (650) 858-6100
25
                                           *Attorneys for Defendants Frost & Sullivan Inc.,*
26                                         *Wyman Bravard, and David Frigstad*

27

28

---

Civil Action No. 5:23-cv-06088          - 32 -          ANSWER, AFFIRMATIVE DEFENSES, AND
                                                              COUNTERCLAIMS

1

## <u>CERTIFICATE OF SERVICE</u>

2

The undersigned hereby certifies that a true and correct copy of the above and

3

foregoing document has been served on February 15, 2024, to all counsel of record who are

4

deemed to have consented to electronic service via the Court's CM/ECF system.  Any other

5

counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

6

7

*/s/ Mark D. Flanagan*
Mark D. Flanagan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28